IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY WILLIAM TELLES, JR., | ) Case No.: 1:10-cv-01911 AWI JLT |
| Plaintiff, | ) FINDINGS AND RECOMMENDATION THAT |
| v. | ) THIS ACTION BE DISMISSED |
| STANISLAUS COUNTY SHERIFF'S DEPARTMENT, et al., | ) |
| Defendants. | ) |

Henry William Telles, Jr. ("Plaintiff") is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts this action against Stanislaus County, Deputy Burns, Deputy Stevens, Officer Daley, and Does 1-100 (collectively, "Defendants"). (Doc. 19 at 1). For the following reasons, the Court recommends that this action be **DISMISSED**.

**I.  Procedural History**

Plaintiff commenced this action on October 13, 2010 (Doc. 1), which the Court screened and dismissed with leave to amend on November 24, 2010 (Doc. 5). He filed his First Amended Complaint on December 20, 2010. (Doc. 6). The Court determined again that Plaintiff failed to state a claim upon which relief could be granted, dismissed the complaint and granted leave to amend the pleadings. (Doc. 7). Following the Court's order to show cause why the matter should not be dismissed based upon his failure to prosecute his action and his failure to file an amended complaint, Plaintiff filed his Second Amended Complaint on January 31, 2011 (Doc. 11), and his

1 Third Amended Complaint on February 8, 2011.  (Doc. 12).  On February 17, 2011, the Court
2 dismissed Plaintiff's Second Amended Complaint because it was superseded by the Third Amended
3 Complaint, and dismissed the Third Amended Complaint for failure to state a claim.  (Doc. 13).
4 Plaintiff was ordered to file an amended complaint, addressing the deficiencies identified by the
5 Court, within 21 days of service, or by March 10, 2011.  (Doc. 13 at 16).

6 　　　Plaintiff failed to file an amended complaint, and on March 14, 2011, the Court issued a
7 second order to show cause why the action should not be dismissed or requiring Plaintiff to file his
8 fourth amended complaint. (Doc. 14).  When Plaintiff failed to respond, the Court issued Findings
9 and Recommendations that the action be dismissed based upon Plaintiff's failure to prosecute the
10 matter and upon his failure to comply with the Court's orders.  (Doc. 15).  On March 31, 2011,
11 Plaintiff filed his response to the order to show cause and asserted that he did not receive the Court's
12 order dismissing the Third Amended Complaint.  (Doc. 16).

13 　　　On April 6, 2011, the Court withdrew the Findings and Recommendations, and directed that
14 the Court's order that dismissed the Third Amended Complaint be re-served to Plaintiff.  (Doc. 17).
15 In addition, the Court granted Plaintiff 14 days, or until April 20, 2011, to file his amended
16 complaint.  *Id.* at 3.  Plaintiff filed his Fourth Amended Complaint[1] on April 26, 2011.  (Doc. 19).

17 **II.  Screening Requirement**

18 　　　When a prisoner seeks relief against "a governmental entity or officer or employee of a
19 governmental entity," the Court is required to review the complaint and identify "cognizable claims."
20 28 U.S.C § 1915(a)-(b).  The Court must screen Plaintiff's Fourth Amended Complaint because the
21 amended complaint supersedes Plaintiff's previously filed complaints.  *See Forsyth v. Humana, Inc.*,
22 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

23 　　　The Court must dismiss a complaint, or portion of the complaint, if it is "frivolous, malicious
24 or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a
25 defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2).  A
26 claim is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible,

---

[1] The caption reads Fifth Amended Complaint, but review of the Court docket indicates this is Plaintiff's fourth amended pleading in the action.  Therefore, the Court will refer to the document as the "Fourth Amended Complaint."

2

whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). In determining malice, the Court examines whether the claims are pled in good faith. *Kinney v. Plymouth Rock Squab. Co.*, 236 U.S. 43, 46 (1915).

### III.   Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed.R.Civ.P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to give the defendant fair notice of the claims against him, and the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Conclusory and vague allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Supreme Court clarified that,

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted). Where the factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; conclusions in the pleading are not entitled to the same assumption of truth. *Id.* If the Court determines the plaintiff fails to state a cognizable claim, the Court may grant leave to amend to the extent that deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

**IV.   § 1983 Claims**

Section 1983 of title 42 of the United States Code does not provide for substantive rights; it is "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  In pertinent part, § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. § 1983.  To plead a § 1983 violation, a plaintiff must allege facts from which it may be inferred that (1) he was deprived of a federal right, and (2) a person who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 28 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).  In addition, a plaintiff must allege that he suffered a specific injury, and show causal relationship between the defendant's conduct and the injury suffered by the plaintiff.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (a person deprives another of a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made").  As with other complaints, conclusory allegations unsupported by facts are insufficient to state a civil rights claim under § 1983.  *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977).

**Discussion and Analysis**

Plaintiff asserts that he was a pre-trial detainee at the Public Safety Center, and under the custody of Stanislaus County at all times relevant to this action.  (Doc. 19 at 2).  According to Plaintiff, he received threats from individuals against whom he was to testify, and because of this, he "stated in open court his Classification would be that of an inmate in Protective Custody." *Id.* at 5. Plaintiff alleges also that his parents "contacted the jail authorities and shared their grave concerns" regarding his safety, and that "warnings were issued to government officials by the Defense Attorney and . . . even by the Prosecutor." *Id.* at 12-13.

4

Plaintiff alleges that he was "viciously and brutally attacked and beaten" by general population inmates on two separate occasions, "the first episode occurring approximately mid August . . . 2009 and the second occurring around October 2009." (Doc. 19 at 5). Plaintiff states he was placed in a six-man holding cell with nine general population inmates and implies that some of these inmates may have defendants in the case against whom he was to testify.[2] *Id.* at 6. Plaintiff alleges two inmates "maneuver[ed] their loosely fastened chains" and attacked him, "whipping their chains in a circular motion striking Plaintiff about the face, head, back and neck repeatedly." *Id.* at 6-7, 11. Plaintiff said he "incurred substantial cuts and bruises." *Id.* at 7. After the attack, "several other inmates summoned assistance for the bloody and beaten Plaintiff." *Id.* at 8. He claims that he was given a note that threatened him if he reported who had attacked him. *Id*. As a result, he requested the "officials" place him in protective custody but this request was denied. *Id.* Though assistance was requested for him by other inmates after the beating (*Id.* at 8), Plaintiff states that he was not provided medical care. *Id.* at 13.

In the second attack, Plaintiff asserts three inmates, including two who attacked him the first time also, used their chain-link restraints to beat Plaintiff "in much the same manner" as in the first attack. *Id.* at 11. Plaintiff alleges that he was not provided medical care after the second incident. *Id.* at 13. Plaintiff believed a request for medical care would be denied, as it was after the first attack, and as a result, "[o]n this occasion, Plaintiff did not ask for any assistance." *Id.* at 21. However, Plaintiff asserts "at least one uninvolved inmate expressed his grave concern for Plaintiff . . . [and] pleaded with jailers to transport [Plaintiff] to the local [h]ospital." *Id.*

Given these facts, Plaintiff raises causes of action for violations of his rights as guaranteed by the Eighth and Fourteenth Amendments, negligence, and infliction of emotional distress.

///
///
///

---

[2] Plaintiff alleges that his placement in the cell with the general population inmates, "exposed Plaintiff to confront the persons sought by his classification to avoid, by inmates he was to testify against." (Doc. 19 at 6) This jumble of words is unclear whether the inmates against whom he would testify were actually in the holding cell or if his housing situation placed him at risk of having contact with them.

A. Protections of the Eighth and Fourteenth Amendments

Plaintiff was a pre-trial detainee at the time of the events that form the basis of his complaint.[3] (Doc. 19 at 2). Therefore, the proper analysis of Plaintiff's complaint of deliberate indifference is under "the more protective substantive due process standard" of the Fourteenth Amendment, rather than the Eighth Amendment. *Jones v. Blanas*, 393 F.3d 918, 931-33 (9th Cir. 2004); *see also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions"); *Gibson v. County of Washoe*, 290 F.3d 1174, 1187 (9th Cir. 2002) ("Because [the plaintiff] had not been convicted of a crime, but had only been arrested, his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment"). Therefore, the claims brought under the Eighth Amendment are recommended to be **DISMISSED**.

However, with issues related to health and safety, "the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes." *Gibson*, 290 F.3d at 1187. Therefore, the requisite standard of care afforded Plaintiff under the Fourteenth Amendment may be determined by applying the standards set forth by the Eighth Amendment.

1. Adequate medical care

Prisoners must rely upon officials for medical care, and as a result "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation and quotation marks omitted). To state a cognizable claim of inadequate medical care, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

///

///

---

[3] Nevertheless, Plaintiff alleges that he was in the custody *of both* the County of Stanislaus and the State of California. However, Plaintiff fails to allege how it was possible for him to be in the custody of both entities at the same time. Moreover, given Plaintiff admits that he was housed "at the SAFETY CENTER, located in Modesto, in the County of Stanislaus a detention facility," the Court is at a loss to understand how he was also in the custody of the State of California.

*Serious medical need*

A serious medical need exists "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991) (overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)), quoting *Estelle*, 429 U.S. at 104. Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60, citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990).

In this case, Plaintiff alleges his attackers struck him "about the face, head, back and neck repeatedly," which caused "substantial cuts and bruises from the numerous contact with the chains." (Doc. 19 at 7). Plaintiff asserts inmates attempted to aid Plaintiff after the attack, and "pleaded with the jailers to permit [Plaintiff] to be examined by a [d]octor or taken to the hospital." *Id.* at 13. Plaintiff argues the Court "may infer and then determine the presence of a serious medical need" because "common sense dictates the skin and muscles will have been torn and ripped open" after being hit with chains. *Id.* Not so. It is Plaintiff's obligation to provide factual allegations that support his claims. *See Ashcroft*, 129 S.Ct. at 1949. It is not for the Court to guess the extent of his injuries.

Despite the Court's repeated admonitions, Plaintiff continues to fail to state in a plain and clear fashion what injuries he suffered and how extensive they were. Though Plaintiff alleges he suffered cuts and bruises, he does not report the severity of these injuries. As the Court has advised Plaintiff repeatedly, this will not suffice. Therefore, the Court does not find that the Fourth Amended Complaint demonstrates that Plaintiff was suffering from a serious medical condition such to implicate constitutional protections. As a result, the complaint is recommended to be **DISMISSED**.

///
///
///

*Deliberate indifference*

In addition to establishing the existence of a serious medical need, a plaintiff must show prison officials responded to that need with deliberate indifference. *Farmer*, 511 U.S. at 834. In clarifying the culpability required for "deliberate indifference," the Supreme Court held,

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw that inference.

*Farmer*, 511 U.S. at 837. Therefore, a defendant must be "subjectively aware that serious harm is likely to result from a failure to provide medical care." *Gibson v. County of Washoe*, 290 F.3d 1174, 1193 (9th Cir. 2002) (emphasis omitted). When a defendant should have been aware of the risk of substantial harm but, indeed, was not, "then the person has not violated the Eighth Amendment, no matter how severe the risk." *Id.* at 1188.

Where deliberate indifference relates to medical care, "[t]he requirement of deliberate indifference is less stringent . . . than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns." *Holliday v. Naku*, 2009 U.S. Dist. LEXIS 55757, at *12 (E.D. Cal. June 26, 2009), citing *McGuckin*, 974 F.2d at 1060. Claims of negligence or medical malpractice are insufficient to claim deliberate indifference. *Id.* at 394; *Toguchi*, 391 F.3d at 1057. Generally, deliberate indifference to serious medical needs may be manifested in two ways: "when prison officials deny, delay, or intentionally interfere with medical treatment, or . . . by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988).

Here, Plaintiff alleges "he and other inmates pleaded with Jailers to permit [Plaintiff] medical attention and care after the [f]irst beating," but anticipating the same result," Plaintiff, himself, did not request treatment after the second attack in October. (Doc. 19 at 13, 20). This is insufficient to demonstrated that any of the named defendants had actual knowledge of the need for medical care after either attack. Notably, Plaintiff asserts unnamed "jailers" denied the requests for medical care, not defendants Stevens, Burns, and Daley. (Doc. 19 at 13). Thus, he fails to tie the failure to provide medical care to any named defendant. Further, Plaintiff has not alleged any facts to support

a conclusion that Defendants knew Plaintiff faced a risk of further harm or injury due to a lack of medical care. *See Conn v. City of Reno*, 592 F.3d 1081 (9th Cir. 2010) (deliberate indifference "requires both (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need *and* (b) harm caused by the indifference") (emphasis added). Therefore, Plaintiff fails to state a cognizable claim of inadequate medical care, and this claim is recommended to be **DISMISSED**.

B. Right to personal safety

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse, and one of the "basic human needs" that prison officials must provide is personal safety. *Hoptowit v. Ray*, 682 F.2d 1237, 1247, 1250-51 (9th Cir. 1982); *see also Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 2006). To establish a violation of this duty, a plaintiff must demonstrate prison officials were deliberately indifferent to a substantial risk of serious harm to the inmate's safety. *Farmer*, 511 U.S. at 834. As above, the deliberate indifference inquiry involves objective and subjective prongs: the deprivation must be "sufficiently serious," and the prison official must have a "sufficiently culpable state of mind . . . of 'deliberate indifference' to inmate . . . safety." *Id.,* quoting *Wilson v. Seiter*, 501 U.S. 294, 297, 302-03 (1991).

Plaintiff alleges that the district attorney's office requested that he be placed in protective custody to protect him from inmates against whom he was to testify. (Doc. 19 at 16-17). According to Plaintiff, "Deputies had been provided documentation in the form of a sheet designating precisely which inmates were so designated for segregation." *Id*. at 6. Plaintiff asserts, "several Deputies held paperwork identifying the two divergent parties, mandating their separation, but the Deputies abrogated their professional responsibilities thereby exposing [Plaintiff] to this incident." *Id.* at 10. In addition, Plaintiff states "both in open court, and on the record, the People through the Prosecutor and also Defense Counsel, both pronounced their warnings for the safeguarding of [Plaintiff]." (Doc. 19 at 17) (emphasis omitted).

These facts are insufficient to raise a claim for deliberate indifference to Plaintiff's personal safety. Plaintiff establishes a serious risk of harm by stating he was placed in the holding cell with individuals from whom he was to be separated, but Plaintiff does not link Defendants to this action. Plaintiff alleges, "Defendants knew that [Plaintiff] was supposed to be separated, segregated from

9

certain others for his protection." (Doc. 19 at 17).  However, Plaintiff does not allege Defendants were the officers who placed Plaintiff in the holding cell with those from whom Plaintiff was to be separated.  Moreover, Plaintiff did not establish that the "jailers" who had "[a]ctual and [c]onstructive knowledge of the circumstances, inmate classifications and preferred holding cell placement of inmates" (Doc. 19 at 6), were the same the "jailers" who placed Plaintiff in the holding cells in which he was attacked.

For Plaintiff to state a cognizable claim for deliberate indifference to his personal safety, the same individuals must have knowledge of Plaintiff's classification status and need for protection, *and* be responsible for placing Plaintiff in the holding cell.  *See Farmer*, 511 U.S. at 834 (requiring a "sufficiently culpable state of mind" to establish deliberate indifference); *Rizzo*, 423 U.S. at 371-72 (defendants must be linked to the violation of constitutional rights).  Therefore, Plaintiff failed to state a cognizable claim for a violation of his right to personal safety against Defendants, and this claim is **DISMISSED**.

C.  Equal Protection

Plaintiff asserts Defendants "subjected Plaintiff to a denial of his Equal Protection Rights, as guaranteed by the U.S. Constitution." (Doc. 12 at 15, emphasis omitted).  The Equal Protection Clause states that "no state shall… deny to any person within its jurisdiction the equal protection of the laws." *U.S. Constitution, amend. XIV §1*.  In essence, this commands that all persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).

A plaintiff can establish an equal protection claim in two ways.  First, a plaintiff may allege "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Lee v. City of Los Angeles*, 205 F.3d 668, 686 (9th Cir. 2000).  Second, where the acts in question do not involve a protected class, a plaintiff can establish a "class of one" claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The Ninth Circuit has indicated such actions are disfavored because "the class-of-one theory of equal protection claim could provide a federal cause of action for

review of almost every executive or administrative government decision." *Engquist v. Oregon Dept. of Agric.*, 478 F.3d 985, 993 (9th cir 2007).

In this case, Plaintiff asserts he is a "class of one." (Doc. 19 at 18). To succeed on a class of one claim, Plaintiff must demonstrate Defendants (1) intentionally (2) treated Plaintiff differently than other similarly situated individuals, (3) without a rational basis for doing so. *Gerhart v. Lake County*, 2010 U.S. App. LEXIS 27112, at *23 (9th Cir. Mar. 18, 2011), citing *Willowbrook*, 528 U.S. at 564. According to Plaintiff, "No other [protective custody] inmate was placed in a confined room and allowed to be brutally beaten even once during Plaintiff's tenure at the Safety Center." (Doc. 19 at 18). However, as discussed above, Plaintiff does not establish *Defendants* placed him in the holding cell with those against whom he was to testify, though he was in protective custody and they were a part of the general population.[4] Therefore, Plaintiff is unable to support his claim for a violation his right to equal protection, and this claim is **DISMISSED**.

D.  Municipal Liability of Stanislaus County

In a § 1983 claim, a local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable solely because it employs a tortfeasor"). Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains through a governmental policy or custom. *Id.* at 694; *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002). To establish liability, Plaintiff must show: (1) he was deprived of a constitutional right; (2) the County of Stanislaus had a policy; (3) that this policy amounted to deliberate indifference to his constitutional right; and (4) the policy "was the moving force behind the constitutional violation." *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992), quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Monell*, 436 U.S. at 690-92. A policy or custom of a government may be demonstrated when:

---

[4] Here, Plaintiff alleges the other inmates were part of the general population. However, in the Third Amended Complaint, Plaintiff stated the inmates who attacked him "were also classified as in 'protective custody.'" (Doc. 12 at 4). Despite the Court's concern about this incongruity, the Court will assume the inmates who attacked Plaintiff were part of the general population, as alleged in the Fourth Amended Complaint.

11

> (1) A longstanding practice or custom…constitutes the standard operating procedure of the local government entity;
>
> (2) The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or
>
> (3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Pellum*, 2011 U.S. Dist. LEXIS 10698, at *8, quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). Further, a governmental policy may be inferred where there is evidence of repeated constitutional violations for which the officers were not reprimanded. *Menotti*, 409 F.3d at 1147.

A policy amounts to deliberate indifference when "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (quotations omitted), citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992); *accord Canton*, 489 U.S. at 390. To establish deliberate indifference by a government, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson*, 290 F.3d at 1186, citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994). Here, Plaintiff has not shown the County had actual or constructive notice of any potential harm instituted by its polices. To the contrary, Plaintiff admits that the County maintained appropriate policies and procedures that employees failed to follow. (Doc. 19 at 5)

Thus, municipal liability to be imposed, the complaint must allege sufficient facts to demonstrate that an unconstitutional custom caused Plaintiff's injuries. A custom is "a widespread practice that . . . is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation mark omitted). Consequently, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). As stated above, Plaintiff asserts that the treatment he received was unique to him; that he was the only inmate in protective custody "who was placed in a confined room and

allowed to be brutally beaten." (Doc. 19 at 18). Thus, Plaintiff's allegations demonstrate that an unconstitutional custom did not cause the claimed damages.

On the other hand, Plaintiff may establish municipal liability based upon a single event if he demonstrates that the person causing the constitutional injury was a final policymaker for the entity. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality) ("[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability."). However, Plaintiff has made no allegations that demonstrate that any named defendant or any of the unnamed actors had final policymaking authority. Thus, the Fourth Amended Complaint fails to state a claim against the County of Stanislaus and the complaint is recommended to be **DISMISSED**.

## V. California Tort Claims Act and Plaintiff's State Law Claims

Plaintiff raises claims of negligence and "emotional distress" (Doc. 19 at 7-10), which are causes of action arising under state law. Under the California Tort Claims Act, a plaintiff may not maintain an action for damages against a public employee unless he timely filed a notice of tort claim. Cal. Gov't Code §§ 905, 911.2, 945.4 & 950.2; *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). Thus, to raise a state claim, Plaintiff must allege facts demonstrating compliance with the presentation requirement of the California Tort Claims Act. *State of California v. Superior Court*, 32 Cal.4th 1234, 1243-44 (2004); *Snipes v. City of Bakersfield*, 145 Cal.App.3d 861, 865 (Cal. App. 1983). When a plaintiff fails to allege compliance, it is fatal to the cause of action and results in the dismissal of the state law claim. *Id.*; *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969).

To comply with the California Tort Claims Act, a complaint must at a minimum, "identify the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted." Cal. Gov't Code § 910(c). Additionally, claims "relating to a cause of action for . . . injury to a person" must be presented no later than six months after the accrual of the cause of action." Cal. Gov't Code § 911.2(a). "Failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." *Pimentel v. County of Fresno*,

2011 U.S. Dist. LEXIS 10117, at *26 (E.D. Cal. Feb. 2, 2011), citing *City of Stockton v. Superior Court*, 42 Cal.4th 730, 738; Cal. Gov't. Code § 945.4.

Plaintiff alleges that he sent a letter to the Stanislaus County Board of Supervisors on March 17, 2010, which "stated the time, place, cause, nature, and extent of the plaintiff's injuries." (Doc. 19 at 4). In part, Plaintiff's claims are based upon injuries caused "mid-August." Giving Plaintiff every benefit of the doubt and assuming his claims accrued on August 31, 2009, the notice given on March 17, 2010 was beyond the six-month limitation. Alternatively, Plaintiff must demonstrate that his compliance with the claims-filing procedure has been excused. Cal. Gov. § Code 946.6.

Moreover, this March 17, 2010 notice appears to be beyond the six-month deadline for making this claim given his allegation that the second incident occurred in "Early October, 2009." (Doc. 19 at 5) However, even assuming his claim was timely filed as to the second incident, he has not alleged that the claim was rejected or deemed rejected by the Board of Supervisors. California Government Code § 945.4 provides, "[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and *has been acted upon by the board, or has been deemed to have been rejected by the board . . .*" (emphasis added). Thus, Plaintiff has failed to plead sufficiently to demonstrate compliance with the California Tort Claims Act. *State of California v. Superior Court*, 32 Cal.4th at 1243. Therefore, the Court will recommend that his claims raised under the California Tort Claims Act be **DISMISSED**.

A. Negligence

To state a cognizable claim for negligence under California law, Plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003). Here, Plaintiff asserts this claim of negligence against Stanislaus County, and officers Burns, Stevens, and Daley.

Here, Plaintiff asserts officers Burns, Stevens, and Daley "were negligent by . . . failing to follow . . . established safety procedures; failing to protect plaintiff from harm; failing to provide necessary and appropriate security measures; and failing to provide necessary and appropriate personnel necessary for the safety, welfare, and protection of [Plaintiff]." (Doc. 19 at 2-3).

However, as set forth above, Plaintiff has not alleged facts that support this assertion, such as the officers having knowledge that Plaintiff was to be protected, or that these officers placed Plaintiff in the holding cell in which he was attacked in October.  Moreover, Plaintiff does not allege these officers had control over the security measures taken or were responsible for providing personnel at the holding cell.

Plaintiff is unable to raise a claim of negligence based on common law tort liability against Stanislaus County.  "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care." *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183, 80 P.3d 656 (2003).  Instead, the liability of the entity is confined to the "rigidly delineated" circumstances set forth in the California Tort Claims Act and all direct liability is based upon statute.  Cal. Gov. Code § 815 ("Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.")  Thus, "to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity." *Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal.App.3d 814, 819 (1960).  Plaintiff alleges the County breached several duties, but Plaintiff fails to support that the duties are mandated by statute or to identify the statute upon which liability may be based.

On the other hand, California "imposes liability on counties under the doctrine of respondeat superior for acts of county officials." *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002).  Under Cal. Gov't Code § 815.2(a), "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative."  However, as discussed above, Plaintiff has failed to state a claim of negligence against Burns, Stevens, and Daley.  Similarly, Plaintiff failed to allege any of the "jailers," who were, presumably, employees of the County, breached a duty to protect Plaintiff by having knowledge of his need for protection *and* by placing him the cell in which he was attacked.  Rather, Plaintiff seems to base his claims for negligence and respondeat superior on common law tort liability, without supporting his claims with factual allegations.  Such omission is fatal to the claims . . . [and] warrant

dismissal of the negligence and respondeat superior claims against the County." *Sarmas v. County of Stanislaus*, 2009 U.S. Dist. LEXIS 104506, at *24 (E.D. Cal. Oct. 26, 2009). Based upon these facts, Plaintiff has failed to state a claim of negligence against the County and against officers Burns, Stevens, and Daley. Therefore, Plaintiff's claim for negligence is recommended to be **DISMISSED**.

>    B.   Emotional Distress

It is unclear whether the claim for "emotional distress" against Stanislaus County is raised as an intentional tort or as negligent infliction of emotional distress. *See* Doc. 19 at 10. Notably, under California law, "the negligent causing of emotional distress is not an independent tort, but the tort of negligence." *Burgess v. Superior Court*, 831 P.2d 1197, 1200 (Ct. App. 1992). A claim of negligent infliction of emotional distress "contains the traditional elements of duty, breach, causation and damages." *Jacoves v. United Merchandising Corp.*, 9 Cal.App.4th 88, 106 (Ct. App. 1992). Consequently, Plaintiff is unable to pursue a claim for relief for the negligent infliction of emotional distress for the same reasons that he cannot pursue a claim for negligence against Stanislaus County .

If Plaintiff intended to assert a claim for intentional infliction of emotional distress against the County based upon the actions of its employees, he must establish: (1) outrageous conduct by the defendant, (2) who intended to cause or recklessly disregarded the probability of causing emotional distress, (3) and the defendant's actions were the actual and proximate cause (4) of Plaintiff's severe emotional suffering. *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004), citing *Brooks v. United States*, 29 F.Supp. 2d 613, 617 (N.D. Cal. 1998). Outrageous conduct is demonstrated when a "defendant's conduct was 'so extreme as to exceed all bounds of that usually tolerated in a civilized society.'" *Van Horn v. Hornbeak*, 2009 U.S. Dist. LEXIS 16134, at *8 (E.D. Cal. Feb. 18, 2009), quoting *Ricard v. Pacific Indemnity Co.*, 132 Cal.App.3d 866, 895 (1982). Here, Plaintiff has failed to link the any employee to any outrageous conduct, and has not shown an intent to cause Plaintiff emotional distress. Therefore, Plaintiff's claim against Stanislaus County for "[e]motional distress as part of injuries sustained" is recommended to be **DISMISSED**.

///

///

**VI.   Doe defendants**

Generally, "Doe" defendants are disfavored in the Ninth Circuit. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *see also Clark v. Rolling Hills Casino*, 2010 U.S. Dist. LEXIS 55087, at *9 (E.D. Cal. May 5, 2010).  However, when the identities of defendants are not known, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie*, 629 F.2d at 642.

Plaintiff names "Does 1-100" as defendants in the Fourth Amended Complaint.  However, Plaintiff fails to state where these defendants, or the others, worked and in what capacity.  Also, Plaintiff fails to identify individuals among these defendants or demonstrate how individuals acted in a manner that caused a violation of his rights.  Presumably, some of the Doe defendants are the "jailers" Plaintiff said placed him in the holding cell in August and October, those who knew he was to be in protective custody, "jailers" who knew the identity of those against whom Plaintiff was to testify, and those who refused the requests for medical treatment. *See* Doc. 19 at 5-6, 12-13, 17.

Plaintiff is required to allege specifically how each defendant— including Doe defendants— violated his rights, and link each defendant's actions to the violation of his rights. *See West*, 487 U.S. at 28; *Johnson*, 588 F.2d at 742.  Previously, the Court informed Plaintiff he must identify individuals among the Doe defendants to sufficiently plead a claim. (Doc. 13 at 13) ("to state a claim against a Doe defendant, Plaintiff must be able to pinpoint individuals who caused him harm").  Furthermore, the Court has determined Plaintiff's claims must be dismissed because they lack supporting factual allegations.  Consequently, Plaintiff has failed to state a cognizable claim against Does 1-100, and he should not be permitted an opportunity to identify the unknown defendants.  The Fourth Amended Complaint as to defendants "Does 1-100" is recommended to be **DISMISSED.**

**VII.   Findings and Recommendations**

Plaintiff fails to establish a cause of action because he has failed to provide supporting factual allegations, and has not linked Defendants to his causes of action.  The Court has informed Plaintiff repeatedly what he must do to state a claim and has repeatedly admonished him that he must provide

*facts and not mere conclusions* to properly support his claims. See Doc. 5 at 5; Doc. 7 at 11; Doc. 13 at 14. The Supreme Court stated,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. **A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do**. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft*, 129 S.Ct. at 1949 (internal quotation marks and citations omitted) (emphasis added). Plaintiff has failed repeatedly to provide information that could support a conclusion that Defendants caused a constitutional violation of his rights.

In spite of the guidance offered by the Court regarding the necessary elements required to state each claim, Plaintiff has filed five pleadings in this action, yet has failed in each to state a cognizable claim that links any defendant to any alleged constitutional violation of his rights. *West*, 487 U.S. at 28; *Rizzo*, 423 U.S. at 371-72. Moreover, because Plaintiff failed to state a constitutional violation of his rights, the Court is acting within its discretion to decline supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a). *See City of Chicago v. Int'l. College of Surgeons*, 522 U.S. 156, 172 (1997) ("that the terms of § 1367(a) authorize the district courts to exercise supplemental jurisdiction over state law claims . . . does not mean that the jurisdiction *must* be exercised in all cases"); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("pendent jurisdiction is doctrine of discretion, not of plaintiff's right"). Therefore, the Court recommends that leave to amend his state law claims not be granted.

Based upon the record and the facts set forth in the Fourth Amended Complaint, it does not appear the deficiencies of his complaint can be cured by amendment, and granting Plaintiff further leave to amend would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (requiring leave to be granted to the extent deficiencies can be cured by amendment).

Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's Fourth Amended Complaint be **DISMISSED WITHOUT LEAVE TO AMEND**; and
2. The Clerk of Court be directed to close the action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these findings and recommendations, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 24, 2011**                                             /s/ Jennifer L. Thurston
                                                                    UNITED STATES MAGISTRATE JUDGE